UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DOUGLAS TRAPP, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil No. 13-12752-LTS |
| MICHAEL CORSINI, | ) ) ) | |
| Respondent. | ) ) ) | |

ORDER ON PETITION FOR A WRIT OF HABEAS CORPUS (DOC. NO. 1)

September 12, 2016

SOROKIN, J.

Petitioner Douglas Trapp ("Trapp"), proceeding pro se, filed a one-ground petition for a writ of habeas corpus under 28 U.S.C. § 2254, stemming from the revocation of his probation. Doc. No. 1.  Respondent Michael Corsini ("Corsini") has submitted an opposition to Trapp's petition, raising three grounds for denial.  Doc. No. 36.[1]  As explained below, Trapp's petition is DENIED.

I.      FACTUAL BACKGROUND

   A.   Initial Background

On May 2, 2005, Trapp pled guilty to a two-count indictment of rape of a child and indecent assault and battery of a person over the age of fourteen.  Doc. No. 36-1 at 5.  He received a prison sentence of between four and five years for the former offense, and three years

---

[1] Trapp briefed the merits of his petition in opposition to Corsini's motion for a scheduling order. See Doc. No. 28.  Corsini filed his opposition to Trapp's petition on September 30, 2014, Doc. No. 36, and Trapp never sought leave to file a reply.  The time to do so has long since passed.

of probation from and after for the latter offense.  Id.  Among other probation conditions, Trapp had to undergo mental health counselling and receive sex offender treatment.  Id. at 6.  Trapp finished his term of imprisonment on November 9, 2009.  Id.

On June 1, 2010, Trapp appeared before a state court judge for violating the aforementioned mental health counseling and sex offender treatment conditions.  Id.  The judge ordered him to meet this conditions and found him in violation of his parole.  Id.  On June 9, 2010, Trapp's probation transferred to Middlesex County.  Id.

      B.      Revocation of Trapp's Probation

Ingrid Nersessian of the Middlesex Probation Department, and the person in charge of Trapp's probation, filed a notice with the Middlesex Superior Court regarding Trapp's purported parole violations, and the Middlesex Superior Court held a hearing which began on September 1, 2010.  See id. at 2.  Nersessian testified that Trapp's "probation has been very, very difficult right from the first office visit," id. at 6-7, and that he has not at all "complied with either getting a mental health evaluation or participating in sex-offender treatment," and "in fact . . . has made it impossible with the local health community to do that."  Id. at 12.  Trapp continually maintained that the mental health and sex offender treatment conditions were waived on June 1, 2010, and denied he had committed the underlying crimes.  Id. at 7.  After Trapp's continued obstinacies, he agreed to meet with the sex-offender treatment program, purportedly for an intake.  See id.  However, at that intake meeting, he (according to a note sent to Nersessian) refused to "participate in group because it's nobody's business what he did or didn't do, and he doesn't want to hear anyone else's business, and that the result by that treatment provider was that the group process is not appropriate for him and he raised the question mark of mental illness."  Id.

Nersessian further testified that after Trapp resisted group therapy, she set up a meeting between Trapp and Sharon Redmond, an intake worker at the Counseling and Psychotherapy Center ("CPC") Area Coordinator, to arrange for individual counseling for Trapp. Id. at 8.  At this phone meeting, Nersessian testified, Trapp "made threats against me which alarmed [Redmond] so much that she called me on my cell phone immediately." Id.  Specifically, Redmond told Nersessian that Trapp "said he had no choice but he would go to court on Monday and destroy you [meaning Nersessian]." Id. at 14.  Based off "the nature of th[is] discussion," Redmond never continued pursuing individual counseling options for Trapp at CPC. Id. at 15.

Nersessian testified that she then began pursuing treatment options for Trapp at the Tri-City/Elliot Center ("TCEC"), the only facility that would take Trapp, a level three sex offender. Id. at 15-16.  She had successfully arranged for TCEC to do an intake of Trapp. Id. at 16.  On July 21, 2010, Nersessian gave Trapp a form regarding the mental health evaluation TCEC would perform at the intake, which Trapp signed. Id.  She also left Trapp a phone message and sent him a letter reminding him to follow up with this intake and that he could not receive treatment until he completed a mental health evaluation. Id. at 18.  Trapp resisted this, saying he was only obligated to receive mental health treatment, and not undergo a mental health evaluation. Id.

Nersessian further testified that on August 24, 2010, she received a phone call from a TCEC clinical director regarding Trapp. Id. at 19.  Trapp had come in and said "he has absolutely no idea why he's here," refused "to cooperate in mental health evaluation and treatment," again reiterated that "it's nobody's business," and said, "[h]e's not going to do it." Id. at 20.  Nersessian summed up Trapp's situation thusly:

> So we're stuck. We're stuck on three points. He has not cooperated with the sex offender counseling, and has told them that that he's not going to.  He has talked his way

3

out of mental health treatment.  And three, he's made it with this threat against me—not safe to go to his home—and we're required to go to the sex-offender person's home . . . .  He was quite belligerent in the office during meetings as well.

Id.

Trapp testified at the second day of the hearing.  Id. at 42.  He again asserted that undergoing a mental health evaluation was not one of his probation conditions.  Id.  He also testified that his insurer would not cover the cost of a mental health evaluation, id. at 43.  He further testified that his only income is a Social Security Disability Insurance check, from which the federal government garnishes a portion, and that once he spends money on basic living expenses, he has almost nothing left over.  Id. at 44.  At the hearing, Trapp did not provide any evidence of his financials.  On direct examination, he agreed only to do the mental health treatment condition "with the stipulation that it be clarified as to what they're looking for."  Id. at 48.

The justice presiding over Trapp's hearing found he had violated his parole.  Id. at 51.  She began by "not accept[ing] that the mental health evaluation was wiped out."  Id. at 51-52.  She noted that "if [Trapp] had come here, or come to the probation department explaining that [paying for treatment] was the issue, that would be one thing," but that based off what she heard she "could [not] possibly find he's a fit candidate for probation."  Id. at 57.  Additionally, she found that Trapp had "indicat[ed] . . . his unwillingness to participate and recognize what he needs."  Id. at 58.  Trapp received a prison sentence of between one and five years.  Id. at 63.

C.   Denial of Trapp's Appeals

4

On March 16, 2012, Trapp moved for a new hearing or reconsideration of the probation surrender. Doc. No. 26 at 42.[2] On March 27, 2012, that motion was denied. Id. at 70. Trapp next appealed to the Massachusetts Appeals Court, on the grounds that revoking his probation due to an inability to pay was improper. Id. at 30. The Appeals Court denied Trapp's appeal on March 11, 2013, holding that "[b]ased upon the evidence presented at the surrender hearing, the judge did not err in concluding that the defendant's failure to engage in mental health counseling and sex offender treatment was wilful and not due to financial inability or other circumstances beyond his control." Commonwealth v. Trapp, No. 12-P-594, 2013 WL 868630, at *1 (Mass. App. Ct. Mar. 11, 2013) (Rule 1:28 Decision). The Supreme Judicial Court ("SJC") denied Trapp's application for further appellate review on May 3, 2013. Commonwealth v. Trapp, 987 N.E.2d 596 (Mass. 2013) (Table).

II.     DISCUSSION

After the SJC denied Trapp's application for review, he filed the instant habeas petition. See Doc. No. 1. Trapp's sole ground for granting the petition was that the Middlesex Superior Court erroneously found him in violation of his probation "when [the] violation was based solely on his inability to pay the fees required to receive mental health treatment." Id. at 6. Corsini raises three reasons to reject Trapp's petition: 1) the Court does not have jurisdiction over the petition because Trapp raises claims under state, not federal, law; 2) that Trapp failed to exhaust his remedies in state court; and 3) that Trapp's petition fails on the merits due to the deference this Court must give to the state courts' findings of fact. See Doc. No. 36 at 1. The Court addresses these arguments.

---

[2] Doc. No. 26 is the Supplemental Answer Corsini filed. The pagination refers to the stamped number at the bottom of each page.

A.     Jurisdiction

Corsini first asserts that Trapp presents his claim as grounded in state law, and that this Court accordingly has no jurisdiction. Id. at 8. This argument does not accurately characterize Trapp's petition.

Trapp relies on an SJC decision, Commonwealth v. Canadyan, 944 N.E.2d 93 (Mass. 2010), for the proposition that state trial courts should not revoke a defendant's probation if "the violations at bar are through no fault of the instant defendant." Doc. No. 28 ¶ 35(E). Canadyan held that the trial court improperly found that a defendant whose "failure to comply with [his Global Positioning System ('GPS') monitoring] condition—given the original GPS technology he was required to use—was through no fault of his own" violated his probation. 944 N.E.2d at 96. "In these circumstances," the SJC observed, "where there was no evidence of wilful noncompliance, a finding of violation of the condition of wearing an operable GPS monitoring device was unwarranted, and is akin to punishing the defendant for being homeless." Id.

Importantly, Canadyan cited a Supreme Court case, Bearden v. Georgia, 461 U.S. 660 (1983), for that last proposition. See Canadyan, 944 N.E.2d at 96 (citing Bearden, 461 U.S. at 669 n.10). The SJC's citation to Bearden contained a parenthetical quoting the Supreme Court's holding that "basic fairness forbids the revocation of probation when the probationer is without fault in his failure to [comply.]" See id. (quoting Bearden, 461 U.S. at 669 n.10) (alteration in Canadyan). Bearden rooted this principle in the Fourteenth Amendment. See 461 U.S. at 672-73 ("To do otherwise would deprive the probationer of his constitutional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.").

Read fairly, then, Trapp asserts a Fourteenth Amendment claim in his petition. Specifically, Trapp contends that the Middlesex Superior Court revoked his probation because he could not afford to pay for mental health counseling and sex offender treatment, and that depriving him of his liberty solely on that basis was unconstitutional. This claim falls under the Court's habeas jurisdiction. See Barbosa v. Mitchell, 812 F.3d 62, 66 (1st Cir. 2016) ("A writ of habeas corpus is available to a 'person in custody pursuant to the judgment of a State court only on the ground that his is in custody in violation of the Constitution or laws or treaties of the United States.'") (quoting 28 U.S.C. § 2254(a)).

B.   Merits[3]

Trapp's petition requires the Court to disturb the factual finding that his failure to comply with his probation conditions stemmed not from an inability to pay, but rather from an uncooperative unwillingness to fulfill those conditions—a resistance which manifested itself, inter alia, in Trapp's refusal to acknowledge that he had a mental health counseling condition at all, his continued disputations over whether he committed the underlying crimes, his statements that his discussions during sex offender treatment were "nobody's business," and his uncooperative and vituperative attitude towards multiple people trying to coordinate Trapp's treatment. Per the Anti-Terrorism and Effective Death Penalty Act, the Court "appl[ies] a presumption of correctness to the trail court's factual findings and also examine[s] whether there has been an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." John v. Russo, 561 F.3d 88, 92 (1st Cir. 2009); see 28 U.S.C. §§ 2254(d)(2)

---

[3] Because, as discussed below, the Court denies Trapp's petition on the merits, it does not address Corsini's argument that Trapp failed to exhaust his state remedies. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless that claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding."); 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").  Trapp cannot overcome this high hurdle.

When evaluating a fact-bound habeas petition, "[i]t suffices to say that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  Wood v. Allen, 558 U.S. 290, 301 (2010).  Here, the Middlesex Superior Court heard testimony from Nersessian about Trapp's repeated failure to take steps to fulfill the terms of his probation while displaying a hostile, uncooperative attitude the entire time.  That court credited this testimony and rejected Trapp's contrary testimony that Trapp's inability to pay was what kept him from participating in the requisite mental health and sex offender programs.  And, as discussed above, the record contained ample evidence to do so.

"The state trial court was best suited to make the creditability determination, and that determination deserved deference."  Johnson v. Dickhaut, 300 F. App'x 454, 456 (1st Cir. 2009); see also Rice v. Collins, 546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to

supersede the trial court's credibility determination.") Against this deferential backdrop, the Court cannot grant Trapp's petition.

III.     CONCLUSION

For the foregoing reasons, Trapp's Petition for a Writ of Habeas Corpus, Doc. No. 1, is DENIED.[4]

                              SO ORDERED.

                              /s/ Leo T. Sorokin
                              Leo T. Sorokin
                              United States District Judge

---

[4] Because "reasonable jurists" could not "debate whether . . . the petition should have been resolved in a different manner," Slack v. McDaniel, 529 U.S. 473, 484 (2000), and based on the circumstances described above, no certificate of appealability shall issue.